**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-1566-WJM-MEH

TRUEFORCE GLOBAL SERVICES, INC.,

     Plaintiff,

v.

TRUEFFECT, INC.,
DAVID HINTON, and
DOES 1–20,

     Defendants.

---

**ORDER DENYING DEFENDANT DAVID HINTON'S MOTION TO DISMISS**

---

Plaintiff Trueforce Global Services, Inc. ("Trueforce") brings this breach of

contract and false promise lawsuit against Defendants TruEffect, Inc. ("TruEffect"),

David Hinton, and Does 1–20.  (ECF No. 38.)

This matter is before the Court on Hinton's Motion to Dismiss ("Motion"), filed on

July 13, 2020.  (ECF No. 46.)  For the reasons explained below, the Motion is denied.

## I. BACKGROUND

### A.    Factual Background

The following factual summary is drawn from Trueforce's Second Amended

Complaint for Breach of Written Contract, Breach of Implied Contract, and False

Promise ("Second Amended Complaint") (ECF No. 38), except where otherwise noted.

The Court assumes the allegations contained in the Second Amended Complaint to be

true for the purpose of deciding the Motion.  *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Trueforce is an information technology services and software consulting company.  (¶ 10.)[1]  TruEffect is a "data and analytics company that sells marketing solutions for companies to digitally connect directly to their customers and prospective customers."  (¶ 11.)

On May 31, 2013, Trueforce and TruEffect entered into an Agreement for Consultants (the "Agreement"), whereby Trueforce promised to provide TruEffect with certain consulting services in exchange for specified compensation.  (¶¶ 12–14.)  Thereafter, Trueforce began working for TruEffect and billed TruEffect bi-monthly for services rendered.  (¶ 16.)

In or around November 2016, TruEffect failed to make payment on two Trueforce invoices.  (¶ 17.)  In a subsequent call on February 7, 2017, TruEffect representatives promised to send Trueforce "three [ ] payments each month until all outstanding invoices totaling $140,560 were paid in full."  (¶ 18.)

In March 2017, Hinton became TruEffect's CEO.  (¶ 19.)  From March 2017 to May 2018, Hinton had numerous conversations with Trueforce personnel in which he promised that TruEffect would pay Trueforce in full for its services. (¶ 22.)  While TruEffect did make some payments to Trueforce, the payments "did not satisfy TruEffect's obligations to Trueforce, but . . . were designed to and reasonably did induce Trueforce to continue performing services as requested by TruEffect and Hinton, and

---

[1]  Citations to (¶ __), without more, are references to the Second Amended Complaint. (ECF No. 38.)

based on TruEffect's and Hinton's repeated and continuous promises to pay Trueforce in full." (*Id.*)

Beginning in January 2018, Hinton received weekly briefings on TruEffect's cash budgets, which specifically identified the amounts that TruEffect owed Trueforce. (¶ 32.) It became clear to Hinton that TruEffect was "in serious risk of failing financially." (¶ 33.) In fact, in January or February 2018, TruEffect's chief financial officer informed TruEffect's creditors that "TruEffect was insolvent, had significant judgments against it, had a massive negative working capital position, that its largest lender had cut it off, it did not have any significant assets to sell and it was unable to pay its bills." (¶ 34.) However, Hinton—Trueforce's contact person for TruEffect—deliberately concealed this information from Trueforce. (¶ 35.)

On May 21, 2018, Hinton sent an e-mail to Gus Laredo of Trueforce with a payment schedule for invoices already due and projected through September 2018 would be paid by October 31, 2018. (¶ 39.) That day, Hinton and Laredo had a telephone call whereby they agreed upon the proposed payment schedule. (*Id.*) During their call, "Hinton specifically and expressly promised Laredo that TruEffect would make all payments as set forth in the payment schedule attached to Hinton's May 21, 2018 e-mail to Laredo" and stated that "[p]ursuant to the approved and promised payment schedule, all outstanding amounts owed to Trueforce would be paid by October 31, 2018." (*Id.*)

According to Plaintiff,

> [b]ased on [Hinton's] knowledge, there is and was no
> reasonable basis for Hinton to believe TruEffect had or
> would have the ability to make the promised payments.
> Hinton knew TruEffect could not pay Trueforce amounts due

and owing, had no reasonable belief or basis for believing that TruEffect could or would make those payments as promised, and had no intention of performing as promised at the time he made those promises.

Hinton created the dynamic whereby he was the sole contact for Trueforce (not even copying TruEffect's [chief financial officer] when supplying Trueforce the payment plan), deliberately failing to make disclosures to Trueforce regarding TruEffect being in the zone of insolvency, and made his promises of payment—known to him to be undoable—solely to induce Trueforce to continue providing its services.  Trueforce is informed and believes that Hinton wished to preserve TruEffect's assets for his own use—selling, licensing or divesting TruEffect's intellectual property (enhanced by Trueforce)—for his own personal property.

(¶¶ 40–41.)  Contrary to the agreed-upon payment plan, TruEffect did not make its first payment on June 15, 2018.  (¶ 42.)  Trueforce's unpaid invoices reached $456,640 by October 2018.  (¶ 44.)

On November 14, 2018, Laredo had a conference call with Hinton and another TruEffect representative.  (¶ 45.)  During the call, Hinton represented that TruEffect was in the "later stages of either selling the company, divesting[,] or doing a strategic deal with another company," and stated that "TruEffect had an agreement on price and simply had to put the agreement in writing."  (*Id.*)  In the same conversation, Trueforce stated that it would "terminate services unless TruEffect set forth a plan to pay current and past due invoices every two weeks."  (¶ 46.)  Hinton agreed to follow up with Trueforce after having an internal meeting with stakeholders and again "promised that TruEffect would pay Trueforce all monies due and owing as agreed."  (*Id.*)

According to Trueforce,

On November 14, 2018 when Hinton promised to pay Trueforce for all outstanding invoices, Hinton knew his promise was false.  Hinton knew of TruEffect's dire financial

4

> condition, he knew TruEffect could not pay Trueforce
> amounts due and owing and he knew that any strategic
> deal—even in the unlikely event TruEffect could close a deal
> to sell its assets, etc.—would not result in TruEffect
> satisfying all of Trueforce's outstanding invoices to TruEffect.
> Hinton, at the time of making this promise, had no intention
> of performing as promised, and no actual or reasonable
> belief that TruEffect could or would perform as promised.
> Hinton made this promise to induce Trueforce to continue
> providing services to TruEffect, which Hinton believed would
> benefit TruEffect and himself as its alter ego.  Among other
> things, as evidenced by TruEffect's failure and refusal to go
> through bankruptcy or properly and legally wind up its affairs
> and account to and pay creditors, Hinton believed and
> intended that he would personally profit from the assets to
> be benefitted by Trueforce's continued services based on
> and induced by his false promises.

(¶ 47.)  Nonetheless, by January 10, 2019, TruEffect owed Trueforce $501,808, not including late fees and other default amounts.  (¶ 52.)

On January 31, 2019, Hinton e-mailed Trueforce a one-page letter which stated that "TruEffect had ceased operations due to its inability to raise capital," and was purportedly "unable to pay any amount to its creditors and was shutting down its business without plans to go through dissolution or bankruptcy."  (¶ 53.)

**B.     Procedural History**

Trueforce filed this action in Contra Costa County Superior Court in California on November 14, 2019, and TruEffect and Hinton removed this action to the Northern District of California on January 2, 2020.  (ECF No. 1.)

On January 10, 2020, Trueforce filed its first amended complaint, which alleged claims of breach of contract, breach of implied contract, and false promise against TruEffect and Hinton.  (ECF No. 7.)  Hinton and TruEffect moved to dismiss the first amended complaint on February 10, 2020.  (ECF No. 15.)  On June 1, 2020, United

States District Judge Saundra Brown Armstrong granted the motion to dismiss as to

Hinton; she dismissed the breach of contract and breach of implied contract claims

against Hinton with prejudice and dismissed the false promise claim against Hinton

without prejudice for Trueforce's failure to state a claim.  (ECF No. 25 at 14.)  Judge

Armstrong also granted TruEffect and Hinton's motion to transfer venue and transferred

the action to the District of Colorado.  (*Id.*)

On June 26, 2020, Trueforce filed the Second Amended Complaint.  (ECF No.

38.)  Trueforce alleges: (1) a breach of contract claim against TruEffect and Does 1–20

(¶¶ 55–67); (2) a breach of implied contract claim against TruEffect and Does 1–20 (¶¶

68–73); and (3) a false promise claim against TruEffect, Hinton, and Does 1–20 (¶¶ 74–

85).

On July 13, 2020, Hinton filed the Motion.  (ECF No. 46.)  Trueforce responded

on August 3, 2020 (ECF No. 47), and Hinton replied on August 17, 2020 (ECF No. 48).

## II.  STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for

"failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is

legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start,*

*Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the

plaintiff's well-pleaded factual allegations and view them in the light most favorable to

the plaintiff."  *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.  Thus, in ruling on a Motion

to Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint

contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously

studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect

the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir.

2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed

even if it strikes a savvy judge that actual proof of those facts is improbable, and that a

recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).

However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual

matter (taken as true) to suggest' that he or she is entitled to relief."  *Robbins v.*

*Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

"[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of

the elements of a cause of action,' . . . 'will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at

555).

### III.  ANALYSIS[2]

To maintain a claim of fraud, a plaintiff must plausibly assert that: (1) the

defendant made a false representation of a material fact; (2) the defendant knew the

---

[2] The parties disagree about whether they adequately conferred prior to Hinton's filing of the Motion.  Trueforce asks the Court to consider proposed amendments to the Second Amended Complaint as if they were incorporated into its pleadings.  (ECF No. 47 at 5.)  Because the Court finds that Trueforce has stated a false promise claim based on the allegations actually contained in the Second Amended Complaint, it need not consider Trueforce's requested amendments.

representation was false; (3) "the person to whom the representation was made was ignorant of the falsity"; (4) "the representation was made with the intention that it be acted upon"; and (5) "the reliance resulted in damage to the plaintiff."  *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013).

Moreover, a plaintiff must satisfy the stringent pleading standards under Rule 9(b), which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997); *see also U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006), abrogated on other grounds by *Cochise Consultancy, Inc. v. U.S. ex rel. Hunt*, 139 S. Ct. 1507 (2019) (recognizing that pleadings under Rule 9(b) "requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud").

Hinton argues that Trueforce's false promise claim fails as a matter of law because the Second Amended Complaint fails to sufficiently plead a misrepresentation, Hinton's intent to defraud, or Trueforce's justifiable reliance. (ECF No. 46 at 11.)

A.    **Misrepresentation**

Hinton argues that Trueforce has failed to plausibly allege that Hinton made a false misrepresentation.  (ECF No. 46 at 11.)  Although he acknowledges that Trueforce alleges that he promised to pay Trueforce "in full" during his May 21, 2018 and November 14, 2018 telephone conversations, he argues that Trueforce does not provide any documentation reflecting his promises and that the context surrounding the

8

statements renders Trueforce's allegations implausible.[3]  (*Id.*)

First, Hinton argues that the proposed payment schedule that Hinton e-mailed to Trueforce prior to their May 21, 2018 telephone call contemplates only $132,000 of payments, which renders Trueforce's allegation that Hinton informed Trueforce that it would be paid *all* outstanding amounts owed incorrect.  (*Id.* at 12 (citing ECF No. 38-5).)

Second, Hinton argues that his statement to Trueforce that TruEffect was in the later stages of being sold or divested and was exploring alternative options contains an inherent representation that no path is certain.  (*Id.*)  Therefore, he argues that "[b]y informing Mr. Laredo that TruEffect was looking for exit options, and further informing Mr. Laredo that Hinton would need to share Mr. Laredo's ultimatum [threatening to cut of Trueforce's services if TruEffect did not pay] internally . . . , Hinton obviously did not commit to paying 'in full' with funds it did not yet have."  (*Id.*)

Although Hinton disputes the accuracy of Trueforce's allegations, the Court must accept Trueforce's allegations as true at the motion to dismiss stage.  *See Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.  Trueforce has plausibly alleged that on May 21, 2018 and November 14, 2018, Hinton informed Trueforce representatives that TruEffect would pay its outstanding balances, despite knowing that these statements were false. (*See* ¶¶ 39–40 ("During their [May 21, 2018] telephone call[,] Hinton specifically and expressly promised Laredo that TruEffect would make all payments as set forth in the payment schedule attached to Hinton's May 21, 2018 e-mail to Laredo" and that "all outstanding amounts owed to Trueforce would be paid by October 31, 2018 . . . Hinton

---

[3]  Hinton provides no case law for the proposition that misrepresentations must be in writing to be actionable, and the Court is not aware of any.

knew TruEffect could not pay Trueforce amounts due and owing"); ¶¶ 46–47 ("During the November 14, 2018 conference call . . . Hinton again promised that TruEffect would pay Trueforce all monies due and owing as agreed. . . . Hinton knew his promise was false.").)  Trueforce's allegations—which identify Hinton's specific misrepresentations, when and where he said them, and who he said them to—are sufficiently particular to allege a false misstatement.

**B.      Intent to Defraud**

Hinton argues that Trueforce has not plausibly alleged that Hinton made any promise with the specific intent to defraud.  (ECF No. 46 at 13.)  Instead, he argues that he "tried to raise money, explored various exit options, but ultimately these efforts failed" and that it "is equally plausible given [Trueforce's allegations] that Hinton wanted TruEffect to pay Trueforce."  (*Id.* at 13–14.)  Moreover, Hinton argues that the Second Amended Complaint "is completely devoid of any explanation as to how Hinton would personally benefit if TruEffect did *not* ultimately pay Trueforce in full," and that Trueforce must show "that Hinton did not intend to pay Trueforce for its services *even if the company successfully raised money or was successfully sold*."  (*Id.* (emphasis in original).)

Hinton overstates Trueforce's burden at the pleadings stage.  A plaintiff need not allege that a defendant does not intend to fulfill his promises despite any conceivable chain of events to state a false promise claim.  Instead, it is sufficient to allege, as Trueforce has done here, that Hinton did not realistically believe or intend that Trueforce would be repaid in full at the time he promised full repayment, but nonetheless promised the repayment to induce Trueforce to continue providing services.  (*See* ¶¶ 40, 41 47,

10

79, 81, 83.)  *See also* Fed. R. Civ. P. 9(b) (allowing a party to generally allege "[m]alice, intent, knowledge, and other conditions of a person's mind").

Thus, the Court finds that Trueforce has plausibly alleged that Hinton intended to defraud Trueforce.

## C.      Justifiable Reliance

"To make out a claim for fraud in Colorado, a party must establish actual and reasonable reliance on a false statement; a party cannot—as a matter of law—continue to rely on a previous expressed false statement after the truth is aired."  *Espinoza v. Ark. Valley Adventures, LLC*, 809 F.3d 1150, 1158 (10th Cir. 2016); *see Vinton v. Virzi*, 269 P.3d 1242, 1247 (Colo. 2013) (en banc) (recognizing that "if a party claiming fraud has access to information that was equally available to both parties and would have led to the true facts, that party has no right to rely on a false representation").

Hinton argues that Trueforce has failed to allege that it reasonably relied on his purported false representations.  (ECF No. 46 at 14.)  Instead, he contends that Trueforce's allegations demonstrate that "Trueforce was aware at all relevant times that TruEffect had financial issues and would potentially be unable to pay in full."  (*Id.*)

The Court agrees that Trueforce's allegations—particularly allegations regarding TruEffect's non-payment of invoices—suggest that Trueforce had *some* awareness of TruEffect's financial distress.  This does not mean, however, that Trueforce was not justified in relying on Hinton's statements that it would be repaid in full.

Trueforce has alleged that it and TruEffect had a contractual relationship lasting approximately six years, and TruEffect was able to make timely payments for over three years.  (¶¶ 16–17.)  Despite TruEffect's repeated non-payment beginning in 2016,

11

TruEffect was able to make some payments to Trueforce until May 2018, although the amounts and frequency of the payments did not satisfy TruEffect's full obligations. (¶¶ 17, 22.)  Hinton—TruEffect's CEO—would reasonably know whether TruEffect would be able to repay its obligations.  It is therefore plausible that Trueforce was ignorant of the falsity of Hinton's May 2018 and November 2018 statements that Trueforce would be repaid in full and would rely on them.  (¶¶ 39, 46.)

Trueforce's other allegations surrounding its relationship with TruEffect strengthen its purported reliance on Hinton's statements.  This is not a situation in which all parties had access to the same information.  Instead, Trueforce alleges that Hinton assigned himself to be Trueforce's sole contact with TruEffect in October 2017.  (¶ 27.) Thereafter, Hinton "did not at this time or any time prior to January 31, 2019 make any disclosures to Trueforce regarding TruEffect's insolvency, the judgments against it, or the truly dire nature of TruEffect's financial situation, but instead directly concealed that information from Trueforce."  (¶ 35.)

Moreover, Trueforce alleges that had it "known of true intentions of TruEffect and Hinton, Trueforce would not have entered into the Agreement or performed the work requested of it."  (¶ 80.)  This allegation is corroborated by Trueforce's repeated threats to cut off its services if TruEffect failed to pay it for its services.  For example, during Hinton's November 2018 call, Trueforce threatened to terminate services unless TruEffect began paying its past due invoices.  (¶ 46.)  Thereafter, in December 2018, Trueforce sent TruEffect written notice of TruEffect's material breach of its payment obligations under the Agreement and stated that it would terminate the Agreement within 60 days if payment in full was not received.  (¶ 49.)

These allegations are sufficient to allege justifiable reliance.

**D.      Lack of Contractual Privity**

Hinton also argues that the false promise claim must be dismissed because Trueforce does not "plead any plausible basis to hold Hinton personally liable for TruEffect's corporate debts."  (ECF No. 46 at 10.)  He argues that only parties to a contract may be sued for the breach of that contract and that he was not a party to any contract with Trueforce.  (*Id.*)

The Court notes, however, the Trueforce does not allege a breach of contract claim against Hinton.  Hinton cites no law stating that Trueforce cannot bring a *false promise* claim against him even though he is not a party to the Agreement, and the Court is not aware of any such law.  *Cf. B & K Distrib. Inc. v. Drake Bldg. Corp.*, 654 P.2d 324 (Colo. App. 1982) (recognizing that officer and director of defendant corporation was liable to plaintiff corporation because his actions with regard to plaintiff corporation were fraudulent).

## IV.  CONCLUSION

Accordingly, for the reasons set forth above, the Court ORDERS that Defendant David Hinton's Motion to Dismiss (ECF No. 46) is DENIED.

Dated this 29th day of January, 2021.

BY THE COURT:

William J. Martinez
United States District Judge

13