# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
### Judge Nina Y. Wang

Civil Action No. 20-cv-01566-NYW-MEH

TRUEFORCE GLOBAL SERVICES, INC.,

    Plaintiff,

v.

TRUEFFECT, INC.,
DAVID HINTON,
CARLOS SALA, and
DOES 1–20,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Motion for Summary Judgment and/or Adjudication ("Motion" or "Motion for Summary Judgment"), [Doc. 103, filed October 13, 2022], filed by Defendant Carlos Sala ("Defendant Sala" or "Mr. Sala"). Plaintiff Trueforce Global Services, Inc. ("Plaintiff" or "Trueforce") has responded to the Motion ("Opposition"), [Doc. 106, filed November 3, 2022], and Mr. Sala has submitted a Reply, [Doc. 107, filed November 17, 2022]. The Court has reviewed the briefing on the Motion and the applicable law, and concludes that oral argument would not materially assist in the resolution of this matter. For the reasons discussed below, the Court respectfully **GRANTS in part** and **DENIES in part** the Motion.

### BACKGROUND

This case arises from a partnership between Trueforce, an information technology and software consulting company, and Defendant TruEffect, Inc. ("TruEffect"), a data and analytics company that provided media and marketing services, to develop a software product suite to

support TruEffect's business. [Doc. 103 at ¶¶ 1, 6–7]. Under the Parties' 2013 contract, Trueforce performed services for TruEffect, and TruEffect agreed to pay Trueforce within 15 days of invoicing, resulting in two payments per month. [*Id.* ¶¶ 9, 12]. While TruEffect's unpaid balance ebbed and flowed over time, by 2017, TruEffect owed several hundred thousand dollars on its account. [*Id.* at ¶¶ 14–19]. Over the following year, executives for Trueforce and TruEffect met to discuss a payment schedule to address both the arrears and payments for future work. [*Id.* at ¶ 30]. TruEffect ultimately ceased operations without filing for bankruptcy or satisfying its obligation to Trueforce. [*Id.* at ¶ 54].

Trueforce sued TruEffect and its Chief Executive Officer David Hinton ("Defendant Hinton" or "Mr. Hinton") in California state court in 2019, and the defendants removed the action to the Northern District of California on the basis of diversity jurisdiction on January 2, 2020. [Doc. 1 at 3]. That court dismissed several claims against Mr. Hinton and transferred the matter to this District. [Doc. 25].[1] The Honorable William J. Martínez then denied motions to dismiss and for summary judgment filed by Mr. Hinton. *See* [Doc. 53; Doc. 96].

Judge Martínez also adopted [Doc. 83] the Recommendation of the Honorable Michael E. Hegarty [Doc. 71] that Trueforce be permitted to amend its complaint to bring a fraud claim against Mr. Sala, another TruEffect executive, based on evidence obtained in early 2021 suggesting that Mr. Sala knowingly made a false statement in 2017. *See* [Doc. 83 at 10–11]. Thus, Plaintiff's operative Third Amended Complaint for Breach of Written Contract; Breach of Implied Contract; and False Promise ("Third Amended Complaint") asserts three causes of action: (1) breach of contract against TruEffect and Does 1–20 ("Doe Defendants"); (2) breach of implied contract

---

[1] Upon transfer, this matter was assigned to Judge Martínez. [Doc. 28]. The case was reassigned to the undersigned on August 5, 2022, upon her appointment as a United States District Judge. [Doc. 100].

against TruEffect and the Doe Defendants; and false promise against TruEffect, Mr. Hinton, Mr. Sala, and the Doe Defendants. [Doc. 84 at 17–22]. As relevant here, the Third Amended Complaint states:

> Trueforce is informed and believes and thereon alleges that Sala and TruEffect are alter egos of each other so that there exists and has existed a unity of ownership and interest between the entity and Sala, such that any individuality and separateness between them has ceased. TruEffect is a mere shell, an instrumentality and conduit through which Sala carried on business, exercising complete control and dominance of such business to the extent that any individuality or separateness does not and did not exist. Adherence to the fiction of the separate existence of TruEffect as distinct from Sala would permit an abuse of the corporate immunities and privileges, and would sanction fraud and promote injustice and bad faith.

[*Id.* at ¶ 6].

In the Motion for Summary Judgment, Mr. Sala seeks summary judgment in his favor on Trueforce's cause of action for false promise, as well as on the "allegations and claims that seek to impose liability on Sala as an alter ego" of TruEffect. [Doc. 103 at 1]. In opposing summary judgment, Trueforce does not appear to contest that it will seek to impose alter-ego liability against Mr. Sala on its claims against TruEffect, so the Court properly considers that issue here. *See* Fed. R. Civ. P. 56(a) (permitting a party to seek summary judgment on "part of [a] claim or defense"); *see also Newport Steel Corp. v. Thompson*, 757 F. Supp. 1152, 1156–57 (D. Colo. 1990) (evaluating alter-ego liability on summary judgment).

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (quotations omitted). It is the movant's burden to demonstrate that no genuine dispute of

3

material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). At all times, the Court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016) (quotation omitted).

To satisfy its burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 (4th ed. April 2023 update) (explaining that the nonmovant cannot rely on "mere reargument of a party's case or the denial of an opponent's allegation" to defeat summary judgment). In considering the nonmovant's evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). Further, the Court may consider only admissible evidence, *see Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial—only the substance must be admissible at trial. *See Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016). For instance, "if th[e] evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

## ANALYSIS

The Court begins by surveying the undisputed material facts and then turns to the parts of the Third Amended Complaint on which Mr. Sala seeks summary judgment.

**I.    Undisputed Material Facts[2]**

1.    Plaintiff Trueforce is an information technology services and software consulting company.  [Doc. 103 at ¶ 6; Doc. 106 at 2; Doc. 103-3 at 268:8–269:6].

2.    Defendant TruEffect, a Delaware corporation, was a data and analytics company that provided media and marketing services.  [Doc. 103 at ¶¶ 1, 3; Doc. 106 at 2; Doc. 103-2 at 29:6–15; Doc. 103-23 at ¶ 6].

3.    Trueforce and TruEffect executed an Agreement for Consultants ("Agreement") in 2013, pursuant to which Trueforce developed and maintained a software product suite for TruEffect in exchange for two payments a month, to be made within fifteen days of invoicing. [Doc. 103 at ¶¶ 7, 9, 12; Doc. 106 at 2; Doc. 103-4 at 2, 11].

4.    Mr. Sala did not negotiate, and is not a signatory to, the Agreement.  [Doc. 103 at ¶¶ 10–11, Doc. 106 at 2; Doc. 103-17 at ¶ 20; Doc. 103-4 at 6].

5.    Unlike TruEffect's other vendors, Trueforce was critical to TruEffect's ability to support its existing customers, and an immediate negative impact on TruEffect's business would follow if Trueforce suspended servicing and development work.  [Doc. 106 at ¶ 120; Doc. 107 at 3; Doc. 106-14 at ¶ 8].

---

[2] As the Parties list 127 material facts, many of which are framed as disputed to varying degrees, the Court limits its discussion at this stage to those facts that are material to resolving the Motion. Additionally, both Parties identify numerous disputes of fact that, on several occasions, only demonstrate denial of a specific portion of a statement of fact or fail to offer contrary evidence, in contravention of Rule 56(c) of the Federal Rules of Civil Procedure and Civil Practice Standard 7.1D(b)(4).  When this is the case, the Court accepts the portions that are not objected to or otherwise disputed as undisputed without further note.

5

6. TruEffect's Board of Directors ("Board") consisted of several experienced, sophisticated members, and no member had unilateral authority. [Doc. 103 at ¶ 5; Doc. 106 at 2; Doc. 103-23 at ¶¶ 9–11].

7. In late 2016, TruEffect failed to make a timely payment under the Agreement. [Doc. 103 at ¶ 14; Doc. 106 at ¶ 14; Doc. 107 at ¶ 14; Doc. 103-5 at 4].

8. TruEffect owed Trueforce the following amounts in late 2016:

   a. In August 2016, $246,819, with $203,090 overdue. [Doc. 103 at ¶ 15; Doc. 106 at ¶ 15; Doc. 103-6 at 3].

   b. In October 2016, $234,927, with $186,335 overdue. [Doc. 103 at ¶ 16; Doc. 106 at ¶ 16; Doc. 103-7 at 3].

   c. In December 2016, $183,528, with $160,776 overdue. [Doc. 103 at ¶ 17; Doc. 106 at ¶ 17; Doc. 103-8 at 2–3].

9. Throughout their relationship, TruEffect made numerous significant payments to reduce the balance owed to Trueforce, including several in 2017. [Doc. 106 at ¶¶ 88–93; Doc. 107 at 3; Doc. 106-2 at 10–21].

10. In March 2017, Mr. Sala became TruEffect's Executive Chairman. [Doc. 103 at ¶ 20; Doc. 106 at ¶ 20; Doc. 103-16 at 78:3–8].

11. Mr. Sala personally invested significant sums of money into TruEffect. [Doc. 103 at ¶ 21; Doc. 106 at ¶ 21; Doc. 106-11 at 98:11–99:1].[3]

---

[3] Trueforce is correct that the deposition evidence cited by Mr. Sala does not support this fact, [Doc. 106 at ¶ 21], but Mr. Sala is correct that the deposition evidence attached by Trueforce does. [Doc. 107 at ¶ 21].

12. In 2017, Mr. Sala told TruEffect's CFO Anthony DiPaolo ("Mr. DiPaolo") that he (Mr. Sala) was the company's de facto CEO.  [Doc. 106 at ¶ 67; Doc. 107 at ¶ 67; Doc. 106-14 at ¶ 5].

13. Mr. DiPaolo regularly communicated with Mr. Sala about TruEffect's financial position, including with respect to the Trueforce account; based on these communications, Mr. Sala became aware that TruEffect was in danger of running out of cash and failing to make payroll.  [Doc. 106 at ¶¶ 68–69; Doc. 107 at 3, ¶ 69; Doc. 106-14 at ¶ 7].

14. Several times, TruEffect representatives told Trueforce's CEO, Gus Laredo ("Mr. Laredo"), that TruEffect was involved in fundraising efforts, as was typical for a startup company.  [Doc. 103 at ¶¶ 22, 26; Doc. 106 at ¶¶ 22, 26; Doc. 103-2 at 170:13–171:6; Doc. 103-23 at ¶ 13].[4]

15. In June 2017, Mr. Laredo contacted TruEffect about the "large balance that is past due" and indicated a "need to reduce Trueforce's risk exposure."  [Doc. 103 at ¶ 23; Doc. 106 at ¶ 23; Doc. 103-12 at 2].

16. In late August 2017, TruEffect owed Trueforce $236,724, with $208,532 overdue.  [Doc. 103 at ¶ 24; Doc. 106 at ¶ 24; Doc. 103-14 at 2].

17. On September 20, 2017, Mr. Sala and Mr. Laredo met for lunch in Broomfield, Colorado, to discuss payment of the outstanding TruEffect balance.  [Doc. 103 at ¶¶ 28–30; Doc. 106 at 5; Doc. 103-2 at 137:14–140:25; Doc. 103-18 at 5].

---

[4] Trueforce denies a portion of this fact on the ground that the evidence cited by Mr. Sala does not indicate who told Mr. Laredo about TruEffect's fundraising efforts. [Doc. 106 at ¶ 22].  However, the deposition transcript makes clear that the question referred to TruEffect as the source of the representations.  [Doc. 103-2 at 170:25–171:6].  The Court also notes that the Parties heavily contest the extent to which Trueforce was made aware that satisfaction of the Trueforce account was contingent on TruEffect obtaining such financing.  See, e.g., [Doc. 106 at ¶ 81; Doc. 107 at ¶ 81].

18. At the lunch, Mr. Laredo learned that Mr. Sala was involved in TruEffect's daily operations.  [Doc. 103 at ¶ 37; Doc. 106 at ¶ 37; Doc. 103-2 at 142:19–22].

19. Mr. Laredo's understanding of Mr. Sala's role at Trueforce did not change between September 2017 and a 2022 deposition.  [Doc. 103 at ¶ 39; Doc. 106 at 5; Doc. 103-15 at 42:20–23].

20. In the second half of 2017, Mr. Sala worked to write off his investment in TruEffect because it was worthless.  [Doc. 106 at ¶ 71; Doc. 107 at ¶ 71; Doc. 106-12 at 10].

21. In October 2017, TruEffect offered Trueforce the opportunity to invest in TruEffect by converting its past-due invoices into an investment position.  [Doc. 103 at ¶ 46; Doc. 106 at ¶ 46; Doc. 103-24 at ¶ 10].

22. Between December 2017 and May 2018, TruEffect made six payments on its overdue balance with Trueforce, totaling over $200,000.  [Doc. 106 at ¶ 94; Doc. 107 at 3; Doc. 106-2 at 20].

23. In early 2018, TruEffect lost its largest customer, and Mr. Hinton let Mr. Laredo know about the loss of the customer.  [Doc. 103 at ¶¶ 52–53; Doc. 106 at 6; Doc. 103-24 at ¶¶ 23–24].

24. On February 2, 2018, Mr. DiPaolo told Mr. Sala and Mr. Hinton that they needed to tell TruEffect's vendors that TruEffect was insolvent; Mr. Sala and Mr. Hinton advised Mr. DiPaolo to inform all TruEffect's vendors *except* Trueforce.  [Doc. 106 at ¶ 86; Doc. 107 at 4; Doc 106-14 at ¶ 8].

25. In May 2018, Mr. Hinton agreed to a payment plan for future Trueforce invoices.  [Doc. 106 at ¶ 126; Doc. 107 at 3; Doc. 106-2 at ¶ 9].

26.     TruEffect explored several opportunities to sell itself in 2018, before deciding to wind down the business without filing for bankruptcy. [Doc. 103 at ¶ 54; Doc. 106 at ¶¶ 54, 127; Doc. 107 at 3; Doc. 103-23 at ¶¶ 15–16; Doc. 106-17 at 153:22–154:3].[5]

## II.    Discussion

Mr. Sala seeks summary judgment on (1) the false-promise claim asserted against him directly, and (2) the imposition of alter-ego or veil-piercing liability as to the claims asserted against TruEffect for breach of contract, breach of implied contract, and false promise.

### A.    False Promise

To maintain a claim of fraud, such as Trueforce's false-promise theory, a plaintiff must establish that: (1) "the defendant made a false representation of a material fact"; (2) the defendant knew the representation was false; (3) "the person to whom the representation was made was ignorant of the falsity"; (4) "the representation was made with the intention that it be acted upon"; and (5) "the reliance resulted in damage to the plaintiff." *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013). Trueforce alleges that, at the September 2017 lunch, Mr. Sala promised Mr. Laredo that Trueforce would be paid "every penny." [Doc. 103-18 at 5]; *see also* [Doc. 103 at ¶ 33]. That statement forms the basis for Trueforce's false-promise claim, and, for purposes of the Motion for Summary Judgment, the Court takes as true that the comment was made. *See* [Doc. 103 at ¶ 36; Doc. 106 at ¶ 36; Doc. 107 at ¶ 36]; *see also Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (observing that "[t]he court should accept as true all material facts asserted and properly supported in the summary judgment motion"). Nevertheless, Mr. Sala

---

[5] In its Opposition, Trueforce disputes part of this fact because of what Mr. Sala admits in the Reply was an imprecise citation. [Doc. 106 at ¶ 54; Doc. 107 at ¶ 54]. As Trueforce does not offer evidence to the contrary, and the evidence in question supports the fact, the Court takes it as undisputed.

argues that the claim against him is untimely under Colorado law, and that Trueforce cannot prove the second and fifth elements, i.e., that he knew the representation was false and that the reliance on the representation caused damage to Trueforce.

### 1. Statute of Limitations

Mr. Sala contends that Colorado's three-year statute of limitations on fraud claims bars Trueforce's claim against him, because the claim—based solely on a statement made in September 2017, *see* [Doc. 103 at ¶ 34; Doc. 106 at 5]—accrued more than three years before Trueforce sought to bring the claim in May 2021. [Doc. 103 at 13]; *see also* Colo. Rev. Stat. § 13-80-101(1)(c). Under Colorado law, a fraud claim accrues when the fraud "is discovered or should have been discovered by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(3). "Whether a statute of limitations bars a particular claim is a question of fact." *See Trigg v. State Farm Mut. Auto. Ins. Co.*, 129 P.3d 1099, 1101 (Colo. App. 2005)

Respectfully, the Court disagrees that Mr. Sala is entitled to summary judgment based on a statute of limitations defense. In authorizing Trueforce to file the Third Amended Complaint that named Mr. Sala in this action, Judge Martínez held that evidence obtained by Trueforce in early 2021 first "gave Plaintiff a factual basis to support a claim against Sala" by suggesting that Mr. Sala knew the "every penny" comment was false when he made it. [Doc. 83 at 8–9]; *see also* [*id.* at 10 (referencing "new information Plaintiff learned during discovery")]. In moving for summary judgment, Mr. Sala essentially argues that, through the exercise of reasonable diligence, Plaintiff could have discovered the alleged falsity of the comment sooner. *See* [Doc. 103 at 13–16]. Trueforce disagrees, *see* [Doc. 106 at 17–19], contending that it was not told: that TruEffect was having difficulties with fundraising, [Doc. 106-19 at ¶ 4]; that the loss of a customer in early 2018 would affect TruEffect's ability to cover expenses, [Doc. 106-2 at ¶ 8]; and that TruEffect

10

was insolvent, [Doc. 106-14 at ¶ 8]. According to Trueforce, "it was not until the production of documents/receipt of [Mr. DiPaolo's] declaration that [Trueforce] knew the extent of Sala's involvement and that Sala had extensive knowledge of TruEffect's finances." [Doc. 106 at 19 n.5].

This Court may not weigh evidence, judge credibility, or rule on the merits of the Parties' competing theories about what Trueforce knew, and when Trueforce knew or should have known it, to resolve their disagreement about the claim's accrual and Trueforce's diligence. *See Nat'l Am. Ins. Co. v. Am. Re-Ins. Co.*, 358 F.3d 736, 742–43 (10th Cir. 2004) ("[O]n 'a motion for summary judgment [the court] cannot evaluate credibility nor can [it] weigh evidence.'" (quoting *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994))). Against this record, this Court concludes that genuine issues of material fact pervade the question whether Trueforce exercised reasonable diligence such that the claim is timely.

### 2. Knowledge of Falsity

Mr. Sala's second argument is that "[t]here is no evidence proving Sala's intent to defraud." [Doc. 103 at 17]. But, as discussed above, Judge Martínez has already held that evidence obtained by Trueforce in 2021 "gave Plaintiff a factual basis to support a [fraud] claim against Sala." [Doc. 83 at 8–9]. Specifically, the evidence permitted a new fraud claim because it gave Plaintiff a factual basis for alleging that Mr. Sala's "every penny" comment from September 2017 was false when made. *See* [*id.*]. Judge Martínez has explained that this evidence constituted "sufficiently reliable and specific information to substantiate a claim that Sala knew his promise was false when he made it." [*Id.* at 9].

Trueforce proffers that same evidence in opposing summary judgment. *See* [Doc. 106-12 at 6–14]. At best, Mr. Sala can attempt to offer evidence to the contrary. *See* [Doc. 103 at 18].

11

But in doing so, Mr. Sala only creates a factual dispute that precludes summary judgment in his favor, which distinguishes the cases he cites for support. *See, e.g.*, *Nelson v. Gas Rsch. Inst.*, 121 P.3d 340, 344 (Colo. App. 2005) (granting summary judgment where "record contain[ed] no evidence that the statements were false when made or were made with the intent not to perform"). Viewed in Trueforce's favor, the record provides a basis for a factfinder to determine that Mr. Sala knew the alleged comment was false. *Cf.* [Doc. 96 at 14–15 (same conclusion as to Mr. Hinton's motion for summary judgment)]. The Court respectfully denies summary judgment on this ground.

### 3.     Reliance

Last, Mr. Sala argues that the evidence fails to show that Trueforce reasonably relied on the "every penny" comment, which would negate an element of the false-promise claim. [Doc. 103 at 19–21]; *see also Espinoza v. Ark. Valley Adventures, LLC*, 809 F.3d 1150, 1158 (10th Cir. 2016) ("[A] party cannot—as a matter of law—continue to rely on a previously expressed false statement after the truth is aired."). He argues (1) that no evidence suggests he knew the actual amount due to Trueforce, so it would not have been reasonable to rely on his promise; (2) that the comment was ambiguous, and it is unclear what Mr. Laredo understood it to mean; and (3) that Mr. Laredo's prior statements expressing concern about TruEffect's ability to pay, and lack of due diligence as to what the "every penny" comment meant, undermined any reasonable reliance. [Doc. 103 at 19–21]. But as discussed above, to the extent that knowledge of the falsity of the comment bears on Trueforce's reasonable reliance, *Espinoza*, 809 F.3d at 1158, there are genuine issues of material fact respecting when Trueforce learned the "every penny" comment was false when made. *See* [Doc. 106 at 23]. And, as Trueforce notes, undisputed evidence supports a conclusion that its reliance was reasonable because TruEffect had made many payments in the past and continued to make several payments in the months after the "every penny" comment. [Doc.

12

103 at ¶¶ 15–19; Doc. 106 at ¶ 94]; *see also* [Doc. 96 at 17 (denying Mr. Hinton's motion for summary judgment, which argued the reliance prong, where "a reasonable fact finder could conclude that Trueforce was ignorant of the falsity of Hinton's purported false promises based on TruEffect's prior history of payments which brought down its outstanding balance")]. Moreover, disputed evidence, if credited by a factfinder, could bolster that same conclusion, making summary judgment in Mr. Sala's favor inappropriate. *See* [Doc. 106 at ¶ 124 ("During the October 17, 2017 meeting between Gus Laredo and David Hinton, Hinton promised [Trueforce] that [TruEffect] was working on catching up on paying [Trueforce's] past due invoices."); Doc. 107 at ¶ 124 (denying Trueforce's characterization of Mr. Hinton's testimony)]. Viewing the evidence in the light most favorable to the nonmoving party, Trueforce has shown that a genuine dispute of material fact prevents summary judgment. *Cf.* [Doc. 96 at 16–17 (same conclusion as to Mr. Hinton on similar record)]. The Motion for Summary Judgment is **DENIED** with respect to the claim for false promise against Mr. Sala.

### B.   Alter-Ego Liability

Mr. Sala also seeks summary judgment on Trueforce's indirect theory of veil-piercing or alter-ego liability.[6] *See In re Maxus Energy Corp.*, 641 B.R. 467, 499 n.64 (Bankr. D. Del. 2022) ("The terms 'alter ego' and 'piercing the corporate veil' are used interchangeably in Delaware law."). Sitting in diversity, this Court analyzes Trueforce's veil-piercing theory under Delaware law because TruEffect is a Delaware corporation. *See Jones v. Marquis Props., LLC*, 212 F. Supp. 3d 1010, 1020–21 (D. Colo. 2016) (predicting that Colorado courts would adopt the Restatement

---

[6] The Court does not pass on the underlying claims against TruEffect, as no party has placed them at issue on summary judgment.

13

approach to veil piercing, which provides for applying the law of the state of incorporation).[7]  In Delaware, "piercing the corporate veil under an alter ego theory" requires showing "(1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present." *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008).  "[S]ome combination" of the following factors is required under the first element: "(1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders." *Id.* at 528–29. "Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."  *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999).

As to his liability for the claims against TruEffect, Mr. Sala argues that "there is no evidence of fraud, inequitable purpose, inadequate capitalization at formation or otherwise, and no diversion of assets to support an alter-ego claim," so summary judgment is warranted.  [Doc. 103 at 22].  Trueforce takes the position that genuine issues of material fact prevent summary judgment on this theory.  *See* [Doc. 106 at 24–25].  As to the first element, Trueforce argues that TruEffect was "consistently undercapitalized," "regularly unable to make payroll and in imminent danger of running out of cash," and insolvent by at least January 2018.  [*Id.* at 24].  It suggests that Mr. Sala "used his position as Executive Chairman to manipulate and defraud [Trueforce] with the inequitable purpose of diverting assets from [Trueforce] to lessen the financial impact to himself."

---

[7] As discussed below, in its Response, Trueforce does not address the substantive law applicable to its request to pierce the corporate veil.  *See* [Doc. 106 at 24–25].

[*Id.* at 25]. On the second element, Trueforce contends that failing to apply alter-ego liability to Mr. Sala would leave Trueforce "with no viable option for recovery," which is "unjust." [*Id.*].

However, Trueforce provides no legal authority as to how the Court should evaluate alter-ego liability, or explaining why or how certain facts are material. [*Id.* at 24–25]. Nor does Trueforce explain why, absent alter-ego liability for the claims asserted against TruEffect, it would have no means to recover in this action. *See* [*id.*]. Even if it had, though, "Delaware courts have held that the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil." *Trevino*, 583 F. Supp. 2d at 530; *see also Mason v. Network of Wilmington, Inc.*, No. Civ.A. 19434-NC, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005) ("If creditors could enter judgments against shareholders every time that a corporation becomes unable to pay its debts as they become due, the limited liability characteristic of the corporate form would be meaningless.").

Respectfully, the Court finds that Trueforce overstates the extent to which any material facts are genuinely disputed. The material facts analyzed in the Motion and Opposition concerning TruEffect's corporate governance are all undisputed. *See* [Doc. 103 at ¶¶ 1–5; Doc. 106 at 2]. Specifically, it is undisputed that TruEffect was owned and governed by experienced and sophisticated investors and produced a platform used by various clients for marketing purposes over a period of years. [Doc. 103 at ¶¶ 1–5]. Trueforce also does not dispute that no member of TruEffect's Board exercised unilateral authority. [Doc. 103 at ¶ 5; Doc. 106 at 2]. In the Opposition, Trueforce relies on statements of fact that are likewise undisputed by Mr. Sala or otherwise do not engender a genuine dispute of material fact.[8] They relate mainly to Trueforce's

---

[8] Several of the facts cited in the Opposition that Mr. Sala purports to deny in his Reply are either not materially contradicted by the denial, *see* [Doc. 106 at ¶¶ 69, 95, 97, 121–23]; subject to evidentiary objections that are insufficiently specific to be analyzed, *see* [*id.* at ¶¶ 71, 96, 99–100]; not material to the veil-piercing analysis because they do not obviously bear on the elements at

financial difficulties, including undercapitalization and insolvency. *See* [Doc. 106 at 24–25]. No facts get at Mr. Sala's control over the company except his own statement that he was the "de facto CEO"—itself, of course, a legitimate role in corporate governance. *See* [*id.* at ¶ 67]. Summary judgment is therefore appropriate.

Whatever TruEffect's troubles, these facts do not suggest to the Court that Mr. Sala "us[ed] 'an independent corporation' to 'defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise evade the law.'" *Trevino*, 583 F. Supp. 2d at 529 (quoting *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002)); *see also Paul Elton, LLC v. Rommel Del., LLC*, C.A. No. 2019-0750-KSJM, 2020 WL 2203708, at *14 (Del. Ch. May 7, 2020) ("Delaware public policy disfavors disregarding the separate legal existence of business entities."). Here, "nothing indicates" that any insolvency and undercapitalization "resulted from an improper attempt to silo liability, siphon funds, or perpetrate fraud." *vMedex, Inc. v. TDS Operating, Inc.*, C.A. No. 18-1662 (MN), 2020 WL 4925512, at *10 (D. Del. Aug. 21, 2020). Rather, the facts suggest the business failed.

Although "the alter ego inquiry is highly fact intensive and better left as an issue reserved for trial," *In re Maxus Energy Corp.*, 641 B.R. at 499–500, no genuine disputes of material fact remain to be resolved. None of the facts put forth by Trueforce in its Opposition persuade the Court that there are sufficient facts for a factfinder to conclude that TruEffect, admittedly an unsuccessful enterprise, "exist[ed] for no other purpose than as a vehicle for fraud" by Mr. Sala. *Wallace*, 752 A.2d at 1184. Because the undisputed facts point the other way, and any disputes of fact are immaterial or not genuine, Defendant Sala's Motion for Summary Judgment with respect

---

issue (nor does Trueforce explain how they would, as it cites no law in resisting summary judgment on this theory), *see* [*id.* at ¶¶ 72, 79, 81–82]; or denied without evidence to the contrary, *see* [*id.* at ¶¶ 85–87].

to alter-ego liability is **GRANTED**.  *Cf. Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 715 (Del. Ch. 2021) ("[T]raditional veil-piercing[] is rooted in equity.").

### III.  Doe Defendants

"[P]ursuant to Fed. R. Civ. P. 10, a caption to a complaint must include the names of all parties." *Culp v. Williams*, No. 10-cv-00886-CMA-CBS, 2011 WL 1597686, at *3 (D. Colo. Apr. 27, 2011), *aff'd*, 456 F. App'x 718 (10th Cir. 2012).  The "Federal Rules of Civil Procedure do not explicitly allow the naming of fictitious or anonymous parties in a lawsuit," and for this reason, "an action may be dismissed if the defendant is not sufficiently identified to permit service of process." *Id.* (quotation omitted).  And a court "should only allow claims against parties whose names are unknown to proceed if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Pearson v. Colo. Dep't of Transp.*, No. 18-cv-02538-KLM, 2019 WL 3550208, at *4 (D. Colo. Aug. 5, 2019) (quotation omitted).

In the Third Amended Complaint, Plaintiff names twenty Doe Defendants under each cause of action, noting that the Doe Defendants' "true names and capacities" are currently unknown but, "[w]hen the true names and capacities of each . . . have been ascertained, Plaintiff will seek leave of this Court to amend this Complaint accordingly." [Doc. 84 at ¶ 7].  But the Third Amended Complaint identifies no allegations specific to a Doe Defendant. *See generally* [*id.*].  In addition, such Doe Defendants have not been served.  *See* Fed. R. Civ. P. 4(m).  Thus, Plaintiff is **ORDERED** to **SHOW CAUSE** as to why its claims against the Doe Defendants should not be dismissed without prejudice. *See Culp*, 2011 WL 1597686, at *3 (dismissing Doe defendants where the allegations against those defendants were "vague and fail[ed] to meet . . . pleading standards"); *Jensen v. Nucor Corp.*, No. 1:21-CV-00100-DAK-JCB, 2021 WL 4748453, at *2–3

17

(D. Utah Oct. 12, 2021) (dismissing Doe defendants where plaintiff "failed to provide any allegations relating to the Doe [d]efendants"); Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)  The Motion for Summary Judgment [Doc. 103] is **GRANTED in part** and **DENIED in part**;

(2)  With respect to the false-promise claim against Mr. Sala, the Motion is **DENIED**;

(3)  With respect to alter-ego or veil-piercing liability on the claims against TruEffect, the Motion is **GRANTED**, and Mr. Sala may not be held liable for any judgment on those claims;

(4)  Trueforce is **ORDERED** to **SHOW CAUSE** no later than **July 24, 2023**, as to why its claims against the Doe Defendants should not be dismissed without prejudice; and

(5)  A Telephonic Status Conference is **SET** for **July 25, 2023**, at **1:00 p.m.**, for the purpose of setting a Final Pretrial/Trial Preparation Conference and trial in this matter. The Parties shall participate using the following dial-in information: 888-363-4749; Access Code: 5738976#.

DATED: July 19, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge